**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARNELL STEPP o/b/o D.S., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-74 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I.  INTRODUCTION

Pursuant to 42 U.S.C. § 1383(c)(3), Darnell Stepp ("Plaintiff"), who is proceeding *pro se* on behalf of his minor son D.S., ("D.S."), seeks judicial review of the final decision of the Commissioner of Social Security's decision denying his claim for child's supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. Plaintiff filed an application on February 25, 2009, alleging that D.S. has been disabled since birth due to fighting, mental problems and hyperactivity (AR 124-130; 160).[1]  His application was denied (AR 89), and following a hearing held on May 19, 2010 (AR 47-66), the administrative law judge ("ALJ") issued his decision denying benefits on June 22, 2010 (AR 32-44).  The Appeals Council denied Plaintiff's request for review (AR 1-3), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision, and presently pending before the Court are the parties' cross-motions for summary judgment.  For the following reasons, Plaintiff's motion will be denied and the Defendant's motion will be granted.

---

[1] References to the administrative record [ECF No. 13], will be designated by the citation "(AR ___)".

II. **BACKGROUND**

D.S. was 17 years old on the date of the ALJ's decision and was enrolled in the 10th grade (AR 36).

*School Records*

D.S. was administered the Wechsler Intelligence Scale for Children-Third Edition (WISC-III) test in December 2002 (AR 201). He achieved a verbal IQ score of 108, which was average, a performance IQ score of 86, which was low average, and a full scale IQ of 97, which was average (AR 201). When D.S. was in the 7th grade, a Reevaluation Report dated January 27, 2006 revealed that he received full-time emotional support services (AR 200). The Report indicated that D.S. had a history of receiving mental health services and medication, and had been diagnosed with attention hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) by Dr. Borczon (AR 200). It was noted that he had a longstanding history of behavioral problems at school and had a hard time controlling his emotions (AR 200; 203). It was reported that he could be very cooperative and friendly with staff, but was also confrontational (AR 203). It was noted that he related very well with some peers but not with others (AR 203). D.S. worked independently while in school, but homework rarely came back completed (AR 203). It was noted that he had been truant for several days at that point in time (AR 203).

On April 25, 2008, the Individualized Education Program ("IEP") team met to assess D.S.'s need for continued emotional support services (AR 178-199).[2] D.S. was in the 9th grade and his IEP revealed that he was functioning at grade level (AR 182). His reported strengths were that he could be friendly and polite, but it was noted that he needed to increase his academic skills and impulse control, as his behavioral problems affected his involvement in the general education curriculum (AR 182). It was recommended that he receive part-time emotional support services for English, Math, Social Studies and Science (AR 188). It was also recommended that he receive psychological services for one hour per month (AR 186). His

---

[2] The IEP team develops an IEP which is a "detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988), *cert. denied*. 488 U.S. 1030 (1989).

2

transcript revealed that while he was in the 9th grade, he was ranked number 5 out of 182 students, and had a cumulative grade point average ("GPA") of 3.818 (AR 169).

D.S.'s English teacher completed a "Teacher Questionnaire" when he was in the 10th grade (AR 209-215).³ It was noted that D.S. had an unusual degree of absenteeism, and had attended class regularly for two months and then disappeared for a few months (AR 209).⁴ In the domain of acquiring and using information, D.S.'s teacher reported that he had no problem reading and comprehending written material, and only a slight problem understanding school and content vocabulary, and participating in class discussions (AR 210). He had problems learning new material however, and had serious problems comprehending instructions, expressing written ideas, recalling and applying previously learned material, and applying problem-solving skills in class discussions (AR 210). His teacher stated that D.S. had trouble writing essays and due to his absenteeism, he was unable to recall and apply previously learned material (AR 210). He also "shut[] down" when faced with a slight challenge, and became frustrated when being helped (AR 210). In the domain of attending and completing tasks, D.S. had slight to serious problems, and he was very dependent on his teacher (AR 211). However, it was further noted that when D.S. understood a task, he was very particular about his presentation, and was a "meticulous writer and read[] higher-level books, like John Grisham" (AR 211).

In the domain of interacting and relating with others, his teacher reported that he had serious problems on a weekly basis playing cooperatively with other children and seeking attention appropriately, and on a monthly basis respecting/obeying adults in authority, and a very serious problem expressing anger appropriately on a weekly basis (AR 212). He had only slight problems following rules, introducing and maintaining relevant topics of conversation, and taking turns in a conversation (AR 212). He had no problems moving about and manipulating objects and had no health problems (AR 213; 215). In the domain of caring for himself, he had a very serious problem on a weekly basis handling frustration appropriately, being patient, identifying and appropriately asserting emotional needs, responding appropriately to changes in

---

³ The teacher is not identified by name and the Questionnaire is unsigned and undated.
⁴ D.S.'s school records reflected that he had many unexcused absences (AR 170-171). He was absent from 238 classes during his first attempt at 10th grade, and 99 classes during his repeat attempt (AR 10, 171).

his mood, and using appropriate coping skills to meet the daily demands of the school environment (AR 214). D.S.'s teacher reported that due to his absenteeism, he did not understand the material and was easily frustrated, which caused him to become disrespectful and rude (AR 214).

D.S.'s transcript revealed that while he was in the 10th grade, he was ranked number 236 out of 345 students, and had a cumulative GPA of 1.630 (AR 12). During the 2009-2010 school year, D.S.'s behavior reports revealed that detention and/or suspension was imposed on a number of occasions due tardiness, truancy, profane language, insubordination, disorderly conduct and/or threats to staff (AR 16-19).

*Plaintiff's Report*

Plaintiff completed a "Function Report" on a form supplied by the Commissioner on December 12, 2008 (AR 147-155). Plaintiff reported that D.S.'s daily activities and physical abilities were not limited (AR 150-151). D.S. was able to use the telephone, repeat stories heard, and talk with his family (AR 150). He was unable to tell jokes accurately, explain why he did something, ask for what he needed or talk with friends (AR 150). Plaintiff further reported that D.S. was able to read and understand stories in books, magazines, and newspapers, add and subtract numbers over 10, and make correct change (AR 151). He was, however, unable to understand, carry out and remember simple instructions (AR 151). Plaintiff indicated D.S. had trouble getting along with friends, siblings and teachers, but was able to get along with Plaintiff and other adults (AR 152). D.S. was able to get to school on time, study and complete his homework, but was not able to accept criticism, keep out of trouble, obey rules, keep busy on his own, finish what he started, and complete his homework on time (AR 153-154).

*Medical evidence*

On June 4, 2008, D.S. underwent a psychiatric evaluation performed by Haluk Aydin, M.D. at the Achievement Center following his discharge from a residential treatment facility program (AR 227-229). Dr. Aydin noted that D.S. had previously been at a juvenile detention center and at a boot camp (AR 227). D.S. reported that he benefitted from boot camp and had learned to improve his behaviors (AR 227). Dr. Aydin reported that D.S. had returned to the

community about two months prior and "had done relatively well since then" (AR 227). He was attending school regularly and had been able to control his anger and aggression (AR 227). D.S. was taking Celexa, and he and his grandmother reported that it was helpful (AR 227). He denied having any depressive symptoms, panic attacks, psychotic symptoms, or suicidal/homicidal thoughts (AR 227-228).

Dr. Aydin reported that D.S. had previously been diagnosed with a mood disorder not otherwise specified in 2006 by Dr. Joy, and with depressive disorder not otherwise specified in 2008 by Dr. Denniston (AR 227). It was noted that D.S. had difficulties with primary support, having lived with his father, grandmother and mother at different times (AR 228). He was doing "relatively well" at his grandmother's home (AR 228). D.S. reported that while he was in placement he missed his brother and considered them close (AR 228). He further reported that he was able to maintain safe behaviors in the community (AR 228).

On mental status examination, Dr. Aydin reported that D.S. was alert, oriented and well-dressed, with goal-directed and spontaneous speech (AR 228). His mood was reported as "okay" and his affect was "somewhat guarded" but became more comfortable as the examination progressed (AR 228). His thought process was linear, and his thought content was logical (AR 228). Dr. Aydin found his insight and judgment were fair (AR 228). He diagnosed him with a mood disorder not otherwise specified, and "rule out post traumatic stress disorder" (AR 228). He assessed him with a Global Assessment of Functioning ("GAF") score of 58[5] and continued him on medication (AR 229).

An outpatient summary from the Achievement Center dated March 25, 2009, noted that D.S. attended two out of five scheduled sessions, and at his last appointment, it was reported that

---

[5]The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 to 60 may have "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)." *Id*.

his "behavior and anger control were good at home" (AR 226).  His mood was stable, and his grades and behavior at school were reported as "good" (AR 226).

On May 8, 2009, D.S. underwent a consultative clinical psychological evaluation performed by Micheal Thayer, Ed.D. (AR 232-240).  Plaintiff attended the examination with D.S., and reported that D.S. currently lived with him (AR 232).  He reported that D.S. was overly aggressive, seemed unhappy and did not interact with others in his life (AR 233).  He further reported however, that D.S. got along well with him, enjoyed church activities, and enjoyed reading books and watching television (AR 233).  Dr. Thayer observed that D.S. was "very positive", pleasant and cooperative, demonstrating very good on-task behavior, impulse control and task commitment (AR 233).  His conversational proficiency was typical for his age and he was cooperative throughout the interview (AR 233).  His level of activity was age-appropriate and he was attentive to questions (AR 233).  Dr. Thayer reported that D.S. was self-confident, appeared at ease and comfortable with the evaluation process, was careful in his response patterns, and generally persisted until asked to stop and move on to the next item (AR 233).  Dr. Thayer estimated that D.S.'s cognitive skills were within the low average to average range (AR 235).

On mental status examination, Dr. Thayer observed that D.S. displayed good grooming and personal hygiene, and was appropriately dressed (AR 236).  His affect was "somewhat" flat, but he smiled and engaged in some humor (AR 236).  His speech was appropriate, and his affect was appropriate to his speech content (AR 236).  Dr. Thayer reported that his mood was "pleasant and positive" (AR 236).  Dr. Thayer characterized D.S.'s "behavior approach" as pleasant, focused, and goal-directed, and he maintained excellent eye contact (AR 236).  His attention and concentration skills were "very good", and his memory was "good" (AR 237).  Dr. Thayer found D.S. was "especially good with mathematical operations", and was "good" at following directions in completing drawings (AR 237).  D.S. stated that his goals were to graduate from high school, attend college, and he was thinking about becoming a child psychologist (AR 237).  Regarding his insight and judgment, Dr. Thayer reported that D.S. was beginning to understand the impact his behavior had on his life and others (AR 237).

Dr. Thayer found that D.S. demonstrated "very good skills" in the domain of attending and completing tasks (AR 238). In the domain of interacting and relating to others, Dr. Thayer found he demonstrated "very good social reciprocity, mutual respect and turn taking" (AR 238). He had no difficulty moving around, but demonstrated immature writing skills (AR 238). D.S. reported that he could take his own bath or shower, dress, cook and engage in community activities (AR 238). His health and well-being appeared to be within normal limits, and he took no medications at the time of the evaluation (AR 238). Dr. Thayer did not diagnose D.S. with any mental condition, and assessed him a GAF score of 70-75[6] (AR 238). Dr. Thayer reported the D.S.'s prognosis was "good" and encouraged his parents to seek outpatient counseling (AR 239).

On June 3, 2009, Manella Link, Ph.D., a state agency reviewing psychologist, reviewed the evidence of record and concluded that D.S. had no limitation in the domains of acquiring and using information; moving about and manipulating objects; and health and physical well-being (AR 243-244). Dr. Link further found D.S. had less than marked limitation in attending and completing tasks; interacting and relating with others; and caring for himself (AR 244-245).

Plaintiff and D.S. testified at the hearing held by the ALJ on May 19, 2010 (AR 47-66). D.S. testified that he was in the 10th grade and his favorite subject was Science (AR 51). He indicated that he had a "big" group of friends at school (AR 51). He stated that he disliked the teachers at his school, since he felt they were "always picking" on him because they thought he was rude and disrespectful (AR 51-52). He did not belong to any school clubs or play sports (AR 52). He testified that he played video games with his brother, occasionally watched television, and performed some household chores (AR 52-53).

Plaintiff testified that D.S. had been disabled since he was seven years old and had received benefits in the past (AR 53-54). He further testified that D.S. exhibited the same behavior as he had since he was seven (AR 54). He indicated that D.S. received emotional

---

[6] An individual with a GAF score of 71 to 80 has "no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." Id. An individual with a GAF score of 61 to 70 has some "mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

support at school, had been in alternative schools for behavior problems, and was suspended two to three times per week (AR 54). Plaintiff testified that D.S. had received medication in the past, but was not currently on medication since the wait to see a psychiatrist was lengthy (AR 54-55). Plaintiff claimed D.S. was violent and had attacked teachers in the past (AR 55). He further claimed D.S. had been to court ten different times for threats and/or physical assaults (AR 55).

Plaintiff testified that D.S. saw a counselor at the Achievement Center, but she had not referred him to a psychiatrist because she did not believe anything was "wrong with him" (AR 56-57). Plaintiff indicated that D.S. had one friend who occasionally spent the night at their home (AR 58). He also spent time with his family, but they did not get along (AR 58). Plaintiff stated that D.S. did not perform any chores around the house, and he had to argue with him to take a bath (AR 58). He indicated that D.S. was always late for school, and he constantly received calls from the school regarding D.S.'s truant behavior (AR 60). Plaintiff stated that D.S. did not like to attend school because he thought everyone was against him (AR 62-63).

Following the hearing, the ALJ issued a written decision finding that D.S. was not disabled within the meaning of the Act (AR 32-44). His request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-3). He subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are

supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV.   DISCUSSION

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment … that causes marked and severe functional limitations, and that can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(3)(A); 20 C.F.R. § 416.906. The Commissioner uses a three-step evaluation process to determine when a child meets this definition. 20 C.F.R. § 416.924(a); *see also Watkins v. Comm'r of Soc. Sec.*, 131 Fed. Appx. 362, 364 (3d Cir. 2005) ("20 C.F.R. § 416.924(a)-(d) sets out the three-step sequential analysis for determining child disability."). At step one, the ALJ determines whether the child is performing any substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, the ALJ determines whether the child has a medically determinable impairment that is severe. 20 C.F.R. § 416.924(a). If the child suffers from a severe medically determinable impairment, the ALJ proceeds to step three to determine whether the child's "medically determinable severe impairment meets, medically equals, or functionally equals a listing. …" 20 C.F.R. § 416.924(d).

Functional equivalence is determined by considering how the child functions in his activities in six broad areas or domains, including: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *Jaramillo v. Comm'r of Soc. Sec.*, 130 Fed. Appx. 557, 560 (3d Cir.

2005). An impairment is functionally equivalent to a listed impairment if a child demonstrates "marked" limitations in two of the above domains or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(a); *Jaramillo*, 130 Fed. Appx. at 560-61. The regulations provide that a "marked" limitation in a domain will be found when an impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation will be found when an impairment "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3)(i).

The ALJ found that D.S. was not engaged in substantial gainful activity, and that his mood disorder was a severe impairment (AR 35). The ALJ concluded, however, that his impairment did not meet or medically equal the listing for mood disorders, nor did it result in limitations that functionally equaled the listing (AR 35). The ALJ found that D.S. had marked limitations in the domain of interacting and relating with others, but did not have marked or extreme limitations in any other domain (AR 40-44). As a result, the ALJ concluded that D.S. was not disabled under the Act and not entitled to benefits (AR 44). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Initially, we must determine whether additional evidence attached to the Plaintiff's Brief should be considered by the Court in our review. This evidence consists of the following: (1) a court order dated October 21, 2005 temporarily placing D.S. in the custody of the Office of Children and Youth; (2) two pages of a ten page court summary dated January 17, 2007; (3) a change of educational placement notice dated January 7, 2010 proposing to move D.S. to alternative education due to threats/assaults to staff; (4) incident reports from various teachers dated from October 20, 2009 through December 23, 2009 recounting behavioral incidents; (5) SSI records dated June 15, 2005 and December 31, 2005; and (6) a magisterial district court docket for Plaintiff reflecting a case that concluded in March 2010. *See* [ECF No. 16] pp. 8-28.

Plaintiff has not specifically requested a remand on the basis of these records, but we will assume he has implicitly done so by attaching them to his Brief. When a claimant seeks to rely on evidence that was not before the ALJ, the district court may remand the case to the

Commissioner if three requirements are met.  *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).  First, the evidence must be "new," in the sense that it is not cumulative of pre-existing evidence on the record.  *Matthews*, 239 F.3d at 593-94; *Szubak v. Sec. of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).  Moreover, evidence is "new" if it was not in existence or not available to the claimant at the time of the administrative hearing.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).  Second, new evidence must also be "material," in that it is relevant to the time period and impairments under consideration, it is probative, and it is reasonably possible that such evidence would have changed the ALJ's decision if presented earlier.  *Matthews*, 239 F.3d at 593-94; *Szubak*, 745 F.2d at 833.  Finally, "good cause" must be shown for not submitting the evidence at an earlier time.  *Matthews*, 239 F.3d at 593.  The court demands these three showings be made to avoid inviting claimants to withhold evidence in order to obtain another "bite of the apple" when the Commissioner denies benefits.  *Matthews,* 239 F.3d at 595 (citing *Szubak*, 745 F.2d at 834).

As pointed out by the Commissioner, most of the above evidence is merely cumulative of the evidence that was before the ALJ.  The ALJ considered D.S.'s school records, which noted that he received special education for emotional support and that he had behavioral problems (AR 4-19; 37; 170-171).  The incident reports from various teachers dated from October 20, 2009 through December 23, 2009 detailing D.S.'s behavioral problems were similar in character to the reports included in the school records considered by the ALJ.  The ALJ further considered the testimony of D.S. that he did not like his teachers and that his teachers believed he was disrespectful to them (AR 36; 51).  The ALJ also considered the testimony of Plaintiff that D.S. received emotional support services at school, had been enrolled in alternative education for a period of time, had received suspensions at school, was physically violent, and had been to court many times (AR 36; 54-55).  Finally, the magisterial docket sheet relates to charges against the Plaintiff and not D.S.  [ECF No. 16] pp. 27-28.

Moreover, the evidence submitted does not suggest there is a reasonable possibility it would have changed the ALJ's decision if presented earlier.  The ALJ found that D.S. had marked limitations in the domain of interacting with and relating to others (AR 41).  These

11

additional records do nothing more than further discuss limitations already considered by the ALJ.

Even if the evidence could be considered new and material, (which it is not), Plaintiff has failed to demonstrate good cause for not presenting it to the ALJ for consideration. All of the above evidence was in existence at the time of the administrative hearing in May 2010, and Plaintiff was represented by counsel at that time. The hearing transcript reflects that the ALJ requested Plaintiff submit additional school records and held the record open for thirty (30) days (AR 65). Plaintiff's counsel submitted D.S.'s school records on May 27, 2010 (AR 4-19), and did not request any further extensions of time in which to submit additional evidence. Plaintiff has not offered any explanation for his failure to have incorporated the evidence into the record prior to the ALJ rendering his decision, nor does one appear in the record. Accordingly, we find that Plaintiff has failed to demonstrate a new evidence remand is warranted. We shall therefore confine our discussion to the evidence that was before the ALJ in rendering his decision.

Plaintiff argues that:

> … [T]he extensive medical record, wrongly rejected by the ALJ is [s]ubstantial evidence that [D.S.] suffers from ADHD (Attention Deficit Hyperactivity Disorder) and ODD (Oppositional Deficit Disorder) and Mood Disorder and Post Traumatic Stress Disorder[,] from severe mental and emotional alone (*sic*) with behavioral disability that renders him unable to engage in substantial gainful activity.

[ECF No. 16] p. 6. We have reviewed the ALJ's decision however, and are satisfied that the ALJ's findings are supported by substantial evidence.

As discussed above, the ALJ must analyze whether a claimant has an impairment or combination of impairments that functionally equals a listing based upon an analysis of six domains: (1) attending and completing tasks; (2) acquiring and using information; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The ALJ found that D.S. had no limitation in the domain of acquiring and using information (AR 39). In assessing this domain, the ALJ considers how well a child acquires or

learns information, and how well he can use the information he has learned. 20 C.F.R. § 416.926a(g). In finding no limitation in this domain, the ALJ observed that D.S.'s school records and teacher questionnaire stated that he gets behind in his school work primarily due to absenteeism (AR 9-10; 39; 170-171; 214). The ALJ noted that he worked independently at school, and his IQ scores were in the low average to average range (AR 39; 201; 203). D.S. was able to read higher level books, (like John Grisham), and was independent in his activities of daily living (AR 39; 211). We observe that D.S.'s IEP revealed that he was functioning at grade level in 2008 with a cumulative GPA of 3.818 (AR 169), and Dr. Link, the state agency reviewing psychologist, found D.S. had no limitations in this area, lending further support to the ALJ's conclusion (AR 243). Accordingly, we find that the ALJ's conclusion with respect to this domain was supported by substantial evidence.

The ALJ concluded that D.S. had a less than marked limitation in the domain of attending and completing tasks (AR 40). This domain gauges how well a child is able to focus and maintain attention, and how well he begins, carries through and finishes activities, including the pace at which he performs them and the ease in which he changes them. 20 C.F.R. § 416.926a(h). The ALJ noted that D.S. had a history of unexcused absences and then became frustrated when he became behind in school (AR 9-10; 40; 170-171; 210; 214). The ALJ found however, that his school records reflected that when he attended school, he was able to work independently and get his work done (AR 40; 203). In addition, Plaintiff reported that D.S. was able to get to school on time and study and complete his homework (AR 153-154). Finally, Dr. Thayer found D.S. had "very good skills" in this domain (AR 238), and Dr. Link concluded that he had less than marked limitation in this domain, even though he had a history of frequent unexcused absences (AR 243). We find that the ALJ's conclusion in this regard is supported by substantial evidence.

The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). An adolescent should be able to

initiate and develop friendships with same aged children, relate appropriately to other children and adults, and should be increasingly able to solve conflicts with peers, family members or adults outside the family. 20 C.F.R. § 416.926a(i)(2)(v). The ALJ found that D.S. has marked limitation in this domain (AR 38; 40). As previously discussed, a "marked" limitation will be found when an impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation will be found when an impairment "interferes very seriously" with the ability to independently initiate, sustain, or complete activities, and is reserved for the "worst" limitations. 20 C.F.R. §416.926a(e)(3)(i). In concluding that D.S. had marked limitation in this domain, the ALJ recognized that he had a history of difficulty getting along with others (AR 41). However, the ALJ found that the objective medical evidence showed that his behavior and anger control were good at home (AR 41; 226-227). The medical evidence further showed that he was able to control his anger and had not been so aggressive (AR 41; 227). The ALJ relied on D.S.'s testimony that he was close to his brother, and Plaintiff's testimony that he was close to him (AR 41; 52; 228).

While D.S.'s teacher found that he had very serious problems expressing anger appropriately (AR 212), his school records also reflected that he could be very cooperative and friendly with staff at school (AR 203). His reported strengths in his 2008 IEP were that he could be friendly and polite (AR 182). Plaintiff reported that D.S. had trouble getting along with his teachers and the school disciplinary records reflect this, but he was also able to get along with Plaintiff, as well as other adults (AR 152). D.S reported to Dr. Aydin that he was close with his brother (AR 228), and testified that he had a "big group of friends" at school (AR 37; 51). In March 2009, the Achievement Center notes revealed that D.S. was controlling his anger and his behavior at school was reported as "good" (AR 37; 226). Dr. Thayer stated in May 2009 that he demonstrated "very good social reciprocity, mutual respect and turn taking" (AR 38; 238). Dr. Link recognized D.S.'s significant history in this area, but found he had less than marked limitation in this domain (AR 38; 243). We conclude that the ALJ's finding that D.S. had a

marked limitation in the domain of interacting and relating with others is supported by substantial evidence.

The ALJ found that D.S. had no limitation in moving about and manipulating objects (AR 42). This domain considers how well a child is able to move his body and objects. 20 C.F.R. § 416.926a(j). There is no evidence demonstrating that D.S. suffers any functional limitation in this area, and Plaintiff acknowledged that D.S. had no difficulties in this domain (AR 150-151). In addition, D.S.'s teacher, Dr. Thayer, and Dr. Link found no limitation in this area of functioning (AR 213; 238; 244). Therefore, substantial evidence supports the ALJ's conclusion with respect to this domain.

In the domain of the ability to care for oneself, the ALJ considers how well a child maintains a healthy emotional and physical state, including coping with stress and change, and whether a child takes care of his own health, possessions and living area. 20 C.F.R § 416.929a(k). The ALJ concluded that D.S. had less than marked limitation in this domain (AR 43). The ALJ recognized that D.S. had a history of low frustration tolerance, and that his teacher noted he was "needy" when students worked independently (AR 43). The ALJ observed that due to his absenteeism, D.S. had difficulty recalling previously learned material and applying it, causing him to become frustrated in trying to figure it out (AR 43). The ALJ further found however, that when he understood a task, he had the confidence to complete it and present it (AR 43). All of these findings are supported by the record. For example, when D.S. attended school regularly, the record reflects that he was able to control his anger and aggression, and his grades and behavior were reported as "good" (AR 37; 226-227). In addition, Dr. Link found he had a less than marked limitation in this domain (AR 38; 244). With respect to non-school related activities, D.S. reported that he was able to shower, dress, cook, perform household chores, and engage in community activities (AR 36; 52-53; 238). Plaintiff acknowledged that D.S. was not limited with respect to his daily activities (AR 150-151).

Finally, the domain of health and physical well-being considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's health and functioning that were not considered in the child's ability to move about and

manipulate objects. 20 C.F.R. § 416.929a(l). The ALJ found D.S. had no limitation in this area (AR 43). Substantial evidence supports this finding, as D.S.'s teacher, Dr. Thayer, and Dr. Link found no limitation in this domain (AR 215; 238; 244).

In sum, substantial evidence supports the ALJ's conclusion that D.S. did not have a marked limitation in two or more domains, and did not have an extreme limitation in any of the six domains.

## V.     CONCLUSION

For the reasons discussed above, Plaintiff's motion will be denied and the Defendant's motion will be granted. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARNELL STEPP o/b/o D.S., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-74 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

AND NOW, this 11th day of October, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF No. 16] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 17] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Darnell Stepp, o/b/o D.S.

The clerk is directed to mark the case closed.


                                                                         s/ Sean J. McLaughlin
                                                                          United States District Judge

cm:     All parties of record